[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 7, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10879
Non-Argument Calendar
_____

D. C. Docket No. 04-03636-CV-JEC-1

TAJUDDIN JARALLAH,

Plaintiff-Appellant,

versus

MATTHEW O. SIMMONS,
ASHLEY L. BAKER, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 7, 2006)**

Before TJOFLAT, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Tajuddin Jarallah appeals the dismissal of his 42 U.S.C. § 1983 complaint. The district court dismissed the complaint based upon judicial immunity and prosecutorial immunity, and for failure to state a claim under § 1983. We affirm the district court.

## I. BACKGROUND

Jarallah's claims arise out of his involvement in three unrelated lawsuits, both as plaintiff and defendant, before Clayton County Superior Court Judge Matthew Simmons between 1999 and 2004, and certain acts allegedly taken by Clayton County District Attorney Robert Keller, Assistant District Attorney Perry Fletcher, and a staff member of the district attorney's office whose identity is unknown, or otherwise referred to as "Gary Doe," in connection with those proceedings. In his complaint, Jarallah specifically asserted Judge Simmons was not acting in his judicial capacity when he allegedly conducted a criminal investigation of him and assisted county prosecutors in their efforts. In addition, Jarallah contended because Judge Simmons failed to rule on certain motions in his 2000 paternity lawsuit, he was prevented from appealing from that case, and he was denied due process of law. Jarallah asserted Judge Simmons was not entitled to judicial immunity, and as a result, Staff Attorney Ashley Baker was not entitled to quasi-judicial immunity. Jarallah asserted defendants Keller, Fletcher, and Doe

2

initiated baseless charges against him for failing to make child support payments. Jarallah also claimed the county prosecutors withheld exculpatory evidence from him, and wrongly conducted incident and criminal checks to arrest and charge him with the commission of a crime. Jarallah sought declaratory and injunctive relief. Jarallah also sought compensatory damages in the amount of $50,000 from each of the defendants, punitive damages in the same amount against each of the defendants, and attorney's fees.[1] We address these issues in turn.

## II. DISCUSSION

A. *Claims against Judge Simmons and Staff Attorney Baker*

We review the grant of judicial immunity de novo. *Smith v. Shook*, 237 F.3d 1322, 1325 (11th Cir. 2001). Although the doctrine of judicial immunity applies to both suits for damages and suits seeking injunctive and declaratory relief, this rule applies to protect federal judges. *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). With respect to state judges, "judicial immunity is not a bar to prospective injunctive relief." *Pulliam v. Allen*, 104 S. Ct. 1970, 1981 (1984).

The Supreme Court has set forth a two-part test for determining when a judge is entitled to immunity from money damages liability when sued under

[1] Although Jarallah raised additional claims in his complaint before the district court, only the issues noted here are raised by him on appeal. Accordingly, we deem the remaining issues abandoned. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

3

§ 1983. *Simmons v. Conger*, 86 F.3d 1080, 1084 (11th Cir. 1996). First, the judge must have dealt with the plaintiff in his judicial capacity. *Id*. "[W]hether an act by a judge is a judicial one relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Mireles v. Waco*, 112 S. Ct. 286, 288 (1991) (quotations and alteration omitted). Second, the judge must not have acted in the "clear absence of all jurisdiction." *Simmons,* 86 F.3d at 1085. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 98 S. Ct. 1099, 1105 (1978) (quotations and citation omitted). In addition, Georgia law directs that judges should make rulings on motions within a timely manner, and a judge's failure to do so may result in impeachment or writ of mandamus, but not a civil suit. *See* O.C.G.A. § 15-6-21; *Brooks v. State*, 458 S.E.2d 349, 352 (Ga. 1995) (noting the only remedies for violation of the statute are mandamus and impeachment of the judge).

"Nonjudicial officials are encompassed by a judge's absolute immunity when their official duties 'have an integral relationship with the judicial process.'"

4

*Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (citation omitted). "Like judges, these officials must be acting within the scope of their authority." *Id.*

We also review de novo a district court's order dismissing a complaint for failure to state a claim. *Long v. Satz*, 181 F.3d 1275, 1278 (11th Cir. 1999). To state a claim under § 1983, a plaintiff must establish two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir. 1985).

The judicial immunity doctrine bars Judge Simmons' liability for damages. First, Judge Simmons dealt with Jarallah in his judicial capacity, and second Judge Simmons did not act in the clear absence of all discretion. *See Simmons,* 86 F.3d at 1084-85. Jarallah's claim that Judge Simmons was acting outside his judicial capacity by failing to rule on certain motions fails because, as noted above, Georgia law provides that ruling on a motion is a judicial act, and a judge's failure to do so may only result in impeachment or a writ of mandamus, neither of which Jarallah requested. *See* O.C.G.A. § 15-6-21; *Brooks*, 458 S.E.2d at 352.

Moreover, we affirm the district court's conclusion that Jarallah failed to state a claim of a constitutional violation under § 1983. Jarallah's complaint

implied the petition alleging baseless charges was never actually filed, and therefore, there was not a criminal proceeding against Jarallah. Thus, Jarallah did not allege facts showing he suffered a constitutional violation. Jarallah also does not cite any legal authority in support of his contention he was deprived of a constitutional right when Judge Simmons allegedly conducted a criminal investigation of him or assisted the District Attorney's office in their efforts. Accordingly, the district court did not err in dismissing Jarallah's claims against Judge Simmons and Baker.[2]

B. *Claims against Prosecutors*

Prosecutors acting within the scope of their prosecutorial duties enjoy an absolute immunity from suit under §1983. *Imbler v. Pachtman*, 96 S. Ct. 984, 993 (1976). Specifically, the functions of initiating a prosecution and presenting the state's case are within the scope of prosecutorial immunity from a civil suit for damages under § 1983. *Id.* at 995. A prosecutor may also be immune from liability for acts done in preparation of initiating a criminal prosecution. *Id.* at 995 n.33.

---

[2] Jarallah concedes Staff Attorney Baker's liability was tied to Judge Simmons' with regard to judicial immunity, and independent review shows Jarallah never alleged Baker acted outside her relationship with Judge Simmons. Thus, Baker is also entitled to judicial immunity. *See Roland*, 19 F.3d at 555.

In *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1274 (11th Cir. 2002), the plaintiff alleged his ex-wife, the prosecutor, and other state defendants were involved in a conspiracy to wrongfully prosecute and convict him of sexually abusing his daughter. We held even if the plaintiff's allegations were true, the prosecutor was entitled to immunity for all actions he took while performing his function as an advocate for the government. *Id* at 1279-80. In outlining the limits of this immunity, we stated: "The prosecutorial function includes the initiation and pursuit of criminal prosecution and all appearances before the court. . . . Under these principles, it is clear that, even if [the prosecutor] knowingly proffered perjured testimony and fabricated exhibits at trial, he is entitled to absolute immunity for doing so." *Id.*

Jarallah's complaint alleged defendants initiated baseless charges against him; however, initiating and pursuing a criminal prosecution falls within a prosecutor's duties and such functions are absolutely protected by prosecutorial immunity. *See Imbler*, 96 S. Ct. at 995. Thus, the district court did not err in dismissing Jarallah's claims against Fletcher, Keller, and Doe.

AFFIRMED.